UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**THE GRAY INSURANCE COMPANY**　　　　　**CIVIL ACTION**

**VERSUS**　　　　　　　　　　　　　　　　　　**NUMBER 09-399-RET-DLD**

**CONCENTRA INTEGRATED
SERVICES, INC.**

### MAGISTRATE JUDGE'S REPORT

This matter is before the court on a motion to dismiss or, alternatively, motion for stay filed by defendant Concentra Integrated Services, Inc. (Concentra), which is opposed and has been referred to the undersigned for a report and recommendation (rec. docs. 2 and 7). The issues before the court are whether plaintiff's claims should be dismissed because they are premature or barred by res judicata or, alternatively, whether this matter should be stayed. The court has subject matter jurisdiction over this matter based on diversity jurisdiction, 28 U.S.C. §1332.

### Factual Background

On June 13, 2005, plaintiff Gray Insurance Company (Gray) entered into an oral agreement with defendant Concentra Integrated Services, Inc. (Concentra) whereby Concentra agreed to provide bill review services on medical bills owed by Gray under the workers' compensation policies written by Gray (rec. doc. 1). Defendant Concentra also provided plaintiff with access to its preferred provider networks, including the Focus network, with which defendant had negotiated alternative rates of payment for medical services to further reduce the amount that plaintiff might owe for medical bills incurred

under its workers' compensation policies.[1]  Pursuant to the oral agreement, plaintiff forwarded medical bills to defendant for review, and defendant would reduce the medical bills pursuant to the statutory workers' compensation fee schedule[2] and then reduce them further pursuant to a discount it had negotiated with each preferred provider organization (PPO discount).[3]

> In recent years, many Louisiana medical providers have filed lawsuits claiming that
> 
> network [PPO] discounts are illegal in workers' compensation claims and, in the alternative, that the network discounts taken by the workers' compensation insurance companies in the State of Louisiana, pursuant to bill review and reductions conducted by the preferred provider organizations were not properly taken pursuant to the contracts between the medical providers and the preferred provider organizations" (rec. doc. 1-2, §6).[4]

A number of these medical providers filed suit against plaintiff in the Office of Workers' Compensation (OWC) for underpayments, penalties, and attorney's fees for PPO discounts taken in violation of La. R.S. 40:2201, et seq. and La. R.S. 23:2021, et. seq. (OWC litagation/action) Id.  Plaintiff settled some of the claims brought by medical providers in the OWC action, and filed the instant suit against defendant Concentra for damages and

---

[1] Focus is a subsidiary of Concentra.

[2] Pursuant to Louisiana law, health care providers who treat patients covered by a workers' compensation policy are entitled to payment for their services pursuant to the workers' compensation medical fee schedule. See La. R.S. 23:1203.1(B).

[3] A preferred provider organization (PPO) is "a contractual agreement or agreements between a provider or providers and a group purchaser or purchasers to provide for alternative rates of payment specified in advance of a defined period of time." See La. R.S. 40:2202.

[4] The PPO statute, La. R.S. 40:2201 *et seq.*, specifically La. R.S. 40:2203.1, provides that a PPO's alternative rates of payment shall not be enforceable upon a provider unless the PPO is clearly identified on the benefit card issued by the group purchaser and presented to the provider when medical care is provided. A violation of La. R.S. 40:2203.1 carries a statutory penalty "of double the fair market value of the medical services provided, but in no event less than the greater of fifty dollars per day of noncompliance or two thousand dollars, together with attorney fees to be determined by the court."

attorney's fees it sustained as a result of monies it was forced to pay in settlement of the OWC claims.[5]

Plaintiff alleges in its complaint that defendant is liable for advising it that illegal PPO discounts were legal while performing bill review on bills submitted by plaintiff; failing to properly determine network deductions pursuant to the contracts it had with the providers or PPO networks, which resulted in underpayments to the providers; failing to advise plaintiff that certain provisions in the contracts between defendant and providers/PPO networks could lead to network discounts being invalid; failing to properly determine the amount owed to providers under the applicable fee schedule; and failing to warn plaintiff that the network discounts were illegal in workers' compensation cases (rec. doc. 1-2). Plaintiff explained at oral argument that it did not have a written contract with defendant and that its reimbursement claim against defendant is based on negligence theories of liability.

Prior to the OWC litigation and the instant suit by plaintiff against defendant for reimbursement, the court in "*Gunderson v. F. A. Richard & Associates, Inc.*," Civil Action 2004-2417, 14th Judicial District Court, Parish of Calcasieu, State of Louisiana (*Gunderson* action) certified the class action claims of all Louisiana medical providers against various insurance companies, PPOs, and TPAs, including Focus/Concentra[6], for "... underpayment, penalties, recovery of damages, or other relief or remedy, arising out of the alleged violations of one or more of the requirements of La. R.S. 40:2203.1 and/or the Louisiana

---

[5] Gray represented at oral argument that some of the claims filed against it in the OWC were settled. The court was not provided with detailed information on how many claims were filed and how many claims were settled.

[6] Focus was named as a defendant in the *Gunderson* action, but the Settlement Agreement covers all claims against Focus and Concentra because they are related entities.

Workers' Compensation Law, La. R.S. 23:1021, *et seq.*"[7] (rec. doc. 5, Exhibit B, Section 1.16). Plaintiff Gray was NOT a party to this suit. On July 19, 2007, Focus/Concentra entered into a settlement agreement that settled all of the claims by the class plaintiffs against Focus/Concentra and "Related Parties" for "Liability."[8] (Gunderson Settlement Agreement)(rec. doc. 5, Exhibit B).

With respect to Focus/ Concentra, the Settlement Agreement provides that "Liability" includes all claims against and liabilities of Concentra for underpayment or alleged violations of one or more of the requirements of La. R.S. 40:2203.1 and/or the Louisiana Workers' Compensation Law, La. R.S. 23:1021, *et seq.*, *including* "liability for contribution, indemnification, or contractual liability to any other person or entity." Id. at Section 1.24. With respect to the "Related Parties," the Settlement Agreement provides that "Liability" includes all claims and liabilities for the underpayment or alleged violations of one or more of the requirements of La. R.S. 40:2203.1 and/or the Louisiana Workers' Compensation Law, La. R.S. 23:1021, *et seq.*, "but only to the extent that Focus, Concentra, and/or Broadspire is liable to the Related Parties for contribution, indemnity, or by contract." Id. The Gunderson Settlement Agreement does not cover potential claims for "Independent Liability" for violations of La. R.S. 40:2201, *et seq.* and La. R.S. 23:1021, *et seq.*, including

---

[7] The class claims were all those claims arising between January 1, 2000 through the "Effective Date," which is defined in several ways in the Settlement Agreement, but is generally when the Settlement Agreement is granted final approval by the court and all delays for filing writs or appeals have expired.

[8] "Related Parties" are defined as any person or entity that Focus/Concentra may be liable to for contribution, indemnity, or by contract as a result of underpayment or other alleged violations of one or more of the requirements of La. R.S. 40:2203.1 and/or the Louisiana Workers' Compensation Law, La. R.S. 23:1021, *et seq.*, pursuant to an agreement or contract for PPO services (rec. doc. 5, Section 1.34).

"any and all liability of a Related Party, other than that for which Focus, Concentra, and/or Broadspire is liable through indemnification, contribution, or contract." Id, Section 1.23.

The class members reserved certain rights under the Gunderson Settlement Agreement, including the right to pursue "Independent Liability" against "Related Parties" and the right to proceed with any and all claims that they may have against any person or entity that was not released from "Liability" Id., Section 4.9.  The Settlement Agreement also imposes certain obligations on the class members, such as the obligation to "defend and hold harmless the Released Parties" from all past, present, or future claims  against any "Released Party" for "Liability." Id., Sections 8.4-8.9.  Additionally, the Settlement Agreement contains a judgment reduction clause, which provides as follows:

> 4.13   It is the intention and a condition of this Settlement Agreement, and the Parties agree, that the Class and each of the Class Members shall not attempt to execute or to collect any judgment or any portion of any judgment obtained against one or more of the Related Parties to the extent or in a manner that the execution or collection of the judgment or any portion thereof would create in the judgment debtor any right to recover from any of the other Released Parties any sums based on Liability, as that term is defined in Section 1.24.
>
> 4.14.   It is the intention and a condition of this Settlement Agreement, and the Parties agree, that the Class and each of the Class Members shall reduce or satisfy any judgment, based, in whole or in part, on Liability, as that term is defined in Section 1.24, that the Class or any Class Member may obtain against a Related Party to the extent necessary to extinguish any claims for contribution, indemnity, subrogation, breach of contract, statutory violation, and/or tort by such Related Party against any other Released Party.

Id., Sections 4.13-4.14.

The terms and provisions of the Gunderson Settlement Agreement were incorporated and made part of the final order and judgment finally approving the Settlement Agreement in the *Gunderson* action (rec. doc. 5, Exhibit C).

Armed with the *Gunderson* Settlement Agreement, defendant moves to dismiss plaintiff's claims based on prematurity and res judicata, or alternatively, to stay this matter pending a decision from the *Gunderson* court as to whether the Settlement Agreement that it negotiated with the class members (medical providers) insulates it from future claims by third parties for "Liability" and "Independent Liability." Defendant's motions to dismiss and motion to stay are now before the court for a report and recommendation.

### Arguments of the Parties

Defendant Concentra conceded at oral argument that its motion to dismiss plaintiff's claim for indemnity based on prematurity was moot because plaintiff had settled the claims brought by the providers in the OWC. Defendant argued that plaintiff failed to state a claim against it because the provider claims brought in the OWC action against plaintiff Gray were for "Independent Liability," and pursuant to the *Gunderson* settlement agreement, defendant Concentra has no obligation to indemnify plaintiff Gray for claims of "Independent Liability." Defendant also argued that even if the claims brought by the providers in the OWC were for "Liability," they are barred by res judicata because all claims for "Liability" against defendant Concentra and "Related Parties," including plaintiff Gray, were released in the *Gunderson* Settlement Agreement. Alternatively, defendant suggests that if the court has questions about whether certain claims were released in the *Gunderson* Settlement Agreement, it should stay this matter and allow Gray an opportunity to seek clarification from the *Gunderson* court as to whether the Settlement Agreement between defendant Concentra and the class members bars plaintiff's claims for reimbursement for the claims plaintiff settled in the OWC litigation because the claims were for "Liability" and/or "Independent Liability,"

-7-

neither of which are claims for which defendant can be liable pursuant to its reading of the Settlement Agreement between it and the Medical Provider class.

Plaintiff Gray responded by arguing that its petition states a claim for negligence against defendant Concentra by alleging that defendant's actions and inactions during the bill review process have subjected plaintiff to actions for network discounts, penalties, and attorney's fees.  Plaintiff further argued that the fact that defendant may have certain defenses to plaintiff's negligence claim as a result of the Settlement Agreement with the providers does not mean that plaintiff failed to state a claim.  Moreover, plaintiff argued that since the Settlement Agreement purported to release only claims for "Liability" that would give rise to an obligation on behalf of defendant Concentra to "Related Parties" for "contribution, indemnity, or by contract," its claims for negligence could not be covered/released by the *Gunderson* Settlement Agreement because it does not have a written contract with defendant.  Plaintiff also argued that the final order approving the Settlement Agreement does not have a res judicata effect on its claims because it was not a party to the *Gunderson* action and, therefore, is not bound by the terms of the Settlement Agreement.  Finally, plaintiff argued that defendant failed to offer any legal authority to support a stay and explained at oral argument that a stay is unnecessary at this time because once it has fully litigated its claims against defendant, defendant has the right under the *S*ettlement Agreement to seek a reduction of the amount owed to the providers in the *Gunderson* action in the same amount it may be forced to reimburse plaintiff in this action.

### **Substantive Law on Res Judicata and Stay**

When deciding whether to give preclusive effect to an earlier state court judgment in a subsequent federal lawsuit, a federal court sitting in diversity applies the preclusion law of

the state in which the judgment was rendered. *St. Paul Mercury Ins. Co. V. Williamson*, 224 F.3d 425, 436 (5th Cir. 2000); *Scarborough v. Clemco Industries*, 264 F.Supp.2d 437 (E.D. La. 2003). Louisiana law governing *res judicata* provides that "[a] judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment." La. R.S. 13:4231(3). Four elements must be present for a claim to be barred by res judicata: "(1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered in a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases." *In re Ark-La-Tex Timber Co.,* 482 F.3d 319, 330 (5th Cir. 2007); see also *Wooley v. State Farm Fire and Cas. Ins. Co.*, 893 So.2d 746 (La. 2005), citing *Burguieres v. Pollingue*, 843 So.2d 1049 (La. 2003).[9]

Louisiana law recognizes that a settlement agreement is res judicata as between the parties to the agreement and is entitled to the same effect as a final judgment. *Trahan v. Coca Cola Bottling Co. United, Inc.,* 894 So.2d 1096 (La. 2005); *Ortego v. State, Dept. of Transp. And Development*, 689 So.2d 1358 (La. 1997). The Louisiana Supreme Court has recognized that a settlement agreement constitutes the law between the parties and must be interpreted in accordance with the intent of the parties. Id. Louisiana law provides that "[a] compromise extends only to those matters the parties intended to settle and the scope of the transaction cannot be extended by implication." Id., citing La. Civ. Code art. 3076. "A compromise precludes the parties from bringing a subsequent action based upon the matter

---

[9] Louisiana law recognizes several exceptions to the general rule of res judicata. A second action by plaintiff is not barred "(1) [w]hen exceptional circumstances justify relief from res judicata effect of the judgment; (2) [w]hen the judgment dismissed the first action without prejudice; or, (3) [w]hen the judgment reserved the right of the plaintiff to bring another action." La. R.S. 13:4232(A).

that was compromised." La. Civ. Code art. 2080.  A compromise is governed by the same general rules of construction that are applicable to contracts.[10] *Trahan*, 894 So.2d 1095.

Louisiana courts have narrowly construed the scope of the doctrine of res judicata. *St. Paul Mercurty Ins. Co.*, 224 F.3d at 437, citing *B.E. Welch v. Crown Zellerbach Corp.*, 359 So.2d 154, 156 (La. 1978). Any doubt as to compliance with the requirements of res judicata is to be resolved in favor of maintaining the second action. Id., citing *Greer v. Louisiana,* 616 So.2d 811, 815 (La.App. 2nd Cir. 1993). The party urging res judicata has the burden of proving each essential element by a preponderance of the evidence. Id.

Defendant asked the court to consider evidence in support of its motion to dismiss based on res judicata, including the pleadings and Settlement Agreement in the *Gunderson* action, the transcript of a hearing in the 14th Judicial District Court, and the affidavit of Thomas Filo (rec. docs. 5 and 17).  Thus, pursuant to Fed. R. Civ. P. 12(d), the court will treat the motion to dismiss based on res judicata as a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Summary judgment is proper only where, viewing the evidence in the light most favorable to the nonmoving party, the court determines that there is no genuine issue of material fact and judgment is proper as a matter of law. See *Coblentz v. Glickman*, 2000 WL 557345 (E.D. La. 2000), citing *In re Intelogic Trace, Inc.*, 200 F.3d 382 (5th Cir.2000) (applying summary judgment standard in the context of a res judicata argument); Fed. R. Civ. P. 56(c).

In the alternative, defendant Concentra asked the court to stay the instant matter pending a decision from the *Gunderson* court as to whether the Settlement Agreement that

---

[10] The general rule of construction of contracts is that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. 2046.

it negotiated with the class members (medical providers) insulates it from future claims by third parties for "Liability" and "Independent Liability."  A district court has the inherent power to stay its proceedings.  The power to stay is "incidental to the power in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louisiana Stadium and Exposition District v. Financial Guaranty Insurance Co.*, 2009 WL 926982 (E.D. La. 2009), citing *Landis v. No. American Co.*, 299 U.S. 248, 254 (1936).  This is best accomplished by the "exercise of judgment, which must weigh competing interests and maintain an even balance." Id.

**Discussion**

At oral argument, defendant Concentra redefined plaintiff Gray's claim from a claim for indemnification to a claim for declaratory relief and damages. Defendant offered sufficient evidence to establish that the amount in controversy in this action was satisfied at the time of removal.[11]  Additionally, defendant waived its motion to dismiss plaintiff's claim for indemnity on the basis of prematurity.[12]  Thus, the only issues before the court are whether

---

[11] Defendant noted that plaintiff's petition seeks damages for "any and all underpayments, penalties, and attorney's fees that it may have to pay the medical providers as a result of the actions, inactions, and omissions of Concentra, as set forth above" and "for any and all attorney's fees that it may have to pay to defend cases brought by the providers" (rec. doc. 1-2). Defendant argued that plaintiff's petition contains a request for declaratory judgment and damages.  The amount in controversy in a declaratory judgment action is the potential value of the claim.  At the time this action was removed, the potential value of the claim was at least the amount of underpayments, penalties, and attorney's fees associated with the 16 patient bills attached to plaintiff's discovery as the basis of the OWC claims. The statutory penalty for a violation of La. R.S. 40:2203.1 (PPO state) can be as great as $2,000, plus attorney's fees.  Defendant suggests that the underpayments, penalties, and attorney's fees on the 16 bills identified would satisfy the amount in controversy.

[12]  The arguments asserted by defendant in its memoranda varied considerably from those presented at oral argument.  For example, in brief, defendant defined plaintiff's claims as claims for contractual indemnification and moved to dismiss them as premature (rec. doc. 4). At oral argument, however, defendant informed the court that its motion to dismiss plaintiff's claim for indemnification based on prematurity was moot because Gray had settled the OWC claims and redefined plaintiff's claim as a claim for declaratory relief and damages. Defendant also submitted an affidavit from counsel for the providers which stated that the OWC claims against Gray were for "Independent Liability," but counsel stated in oral argument the claims appeared to be for "Liability."  This latter contradiction was explained away as of no consequence, because it is defendant's position that it settled any liability it could possibly ever have to Gray through its agreement with the providers.  Gray, not surprisingly, disagrees that defendant and the providers could agree between themselves to release any and all claims Gray might have against defendant.

the final order and judgment approving the Settlement Agreement in the *Gunderson* action has a res judicata effect on plaintiff's claims for declaratory judgment and/or damages in the instant suit and whether a stay is necessary. Defendant Concentra has the burden of proving that plaintiff's claims are barred by res judicata or that a stay is necessary.

There is no dispute between the parties that the final order and judgment in the *Gunderson* action was rendered by a court of competent jurisdiction and is a final judgment on the merits. Thus, two of the elements of res judicata are satisfied, and the court focuses on whether defendant Concentra established that there is an identity of parties and claims in both actions. The court first considers whether the parties are identical in both actions.

Under Louisiana law, identity of the parties does not mean that the parties must be the same physical or material parties, but they must appear in the suit in the same quality or capacity. *St. Paul Mercury Ins. Co. V. Williamson*, 224 F.3d at 437. The *Gunderson* Settlement Agreement is between the *Gunderson* class plaintiffs and Focus Healthcare Management, Inc. (rec. doc. 5). Plaintiff Gray was not a party to the *Gunderson* litigation or settlement, and there is no evidence that plaintiff had any involvement in negotiating the terms of the Settlement Agreement. Moreover, defendant has not offered evidence to prove that it had the authority to settle claims against or on behalf of any "Related Parties," including Gray, that Gray is a third-party beneficiary of the settlement, or that the Settlement Agreement insulates it from any and all claims that plaintiff may have against it, regardless of the theory of recovery.[13] Thus, defendant has not shown that the parties affected by the

---

[13] A *stipulation pour autrui* is never presumed to exist. The intent of the contracting parties to stipulate a benefit in favor of a third party must be made manifestly clear. See *Ducote Jax Holdings, L.L.C. v. Bradley*, 2006 WL 3313716 (E.D. La. 2006), citing *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1147 (5th Cir. 1993); see also La. Civ. Code art. 1978.

final order and judgment approving the Settlement Agreement are identical to the parties in the instant suit.

Next, the court considers whether the same claim or cause of action was involved in both cases. The final order and judgment in the *Gunderson* action adopts and incorporates the terms and provisions of the Settlement Agreement between the class plaintiffs and Focus/Concentra. Thus, the court will look to the terms of the Settlement Agreement in analyzing whether plaintiff Gray's claims for reimbursement are barred by res judicata. See *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472 (5th Cir. 2002); *Trahan v. Coca Cola Bottling Company United, Inc.*, 894 So.2d at 1095.

Again, defendant offered inconsistent arguments with respect to whether plaintiff's claims in the instant suit are the same claims that were released in the *Gunderson* action. Defendant argued in brief that Gray failed to state a claim against it because the claims Gray settled in the OWC were for Independent Liability, which were reserved in the Settlement Agreement and for which Concentra does not owe contribution or indemnification.[14] At oral argument, however, defendant stated that the *types* of claims brought by the medical providers against Gray in the OWC action would constitute claims for "Liability" under the Settlement Agreement.[15] Defendant's inconsistent arguments and second-hand descriptions

---

[14] The only evidence defendant offered to prove that the claims brought and settled by Gray in the OWC were for "Independent Liability" and, therefore, claims for which Concentra did not owe indemnification was the affidavit of Thomas Filo, counsel for the *Gunderson* class. Mr. Filo's affidavit does not indicate that he is the attorney for the class members who have brought suit against plaintiff Gray in the OWC nor does it include any specific facts, of which he has personal knowledge, regarding the types of claims brought against plaintiff Gray in the OWC. Rather, the affidavit contains conclusions of law and opinions based on Mr. Filo's interpretation of the Settlement Agreement, neither of which are admissible or provide support for defendant's position. Just how the providers and defendant can get together and agree that a non-participating third-party is forever barred from bringing any claims whatsoever against one of them has not been explained. Using their lexicon, any claim brought by plaintiff would have to be "big L" or "IL" – neither of which would be allowed, according to defendant, because it and the providers agreed it was prohibited.

[15] When asked specifically to describe the *types* of claims brought by the medical providers against Gray in the OWC, defendant's counsel responded that the claims are for "underpayments, the discounted
(continued...)

of the types of claims that were filed against Gray in the OWC action make it impossible to identify the precise nature of any of the claims discussed, much less whether there is an identity of any of the claims in the *Gunderson* action and the instant action.  According to plaintiff, the claims in the instant matter, as stated earlier, lie in negligence, and largely will be defined through discovery by answering the questions of "who knew what and when did he know it."

Defendant, therefore, has failed to prove that the final order and judgment approving the Settlement Agreement in the *Gunderson* action has a res judicata effect on plaintiff's claims in the instant suit.  Defendant's motion for summary judgment based on res judicata should be denied.

In the alternative, defendant requests that the court stay this matter pending a decision from the *Gunderson* court as to whether the Settlement Agreement that it negotiated with the class members (medical providers) insulates it from future claims by third parties for "Liability" and "Independent Liability." As previously explained, plaintiff was not a party to the *Gunderson* litigation or Settlement Agreement; therefore, decisions between defendant Concentra and the class members to limit future claims by third parties, such as plaintiff, based on naming them "Liability" or "Independent Liability" are not binding on plaintiff. While the providers may have released certain claims, which ultimately might be to the benefit of plaintiff or defendant, defendant  has provided no authority for the proposition that a non-party to the settlement agreement can have its future claims against others released without its knowledge or agreement.  Nor have defendants provided any authority for giving the

---

[15](...continued)
amount, and attorney's fees," which "is exactly what I settled." July 29, 2010 Transcript, 10:25-10:28. Defendant's counsel explained that the judgment reduction clause in the Settlement Agreement gives him the opportunity to seek a reduction of the amount paid to the providers in the *Gunderson* settlement for the amount that it is forced to reimburse Gray in this suit.

participants of the Settlement Agreement the right to define claims brought by non-participants, which is simply another way of "releasing" or voiding all claims by third-parties against the settling parties.

Moreover, even the terms of the Settlement Agreement itself anticipate that the settling parties ("Released Parties") are not insulated from any and all future claims by third-parties. For example, while the reservation of rights clause allows the *Gunderson* class plaintiffs to pursue "Independent Liability" claims against "Related Parties" and "any and all claims" against persons or entities that were "not released from Liability" (rec. doc. 5, Section 4.9), the Settlement Agreement also provides that the class members are required to "defend and hold harmless the Released Parties" from all past, present, or future claims against a "Released Party" for "Liability" (Id., Sections 8.4-8.9). Additionally, the Settlement Agreement requires the class members to reduce or satisfy any judgment based on "Liability" that they may obtain against a "Related Party" to the extent necessary to "extinguish any claims for contribution, indemnity, or subrogation, breach of contract, statutory violation, and/or tort by such Related Party against any other Released Parties." Id, Section 4.14.

The Settlement Agreement also imposes obligations on the class members in connection with any judgment or settlement with a "Related Party," such as the obligation to obtain either a waiver or judicial determination that the "Related Party" does not have a claim for contribution, indemnity, subrogation, breach of contract, statutory violation, or tort against the other "Released Parties." (Id., Sections 8.5-8.6)  These provisions suggest that the parties to the Settlement Agreement anticipated future claims by the class members (medical providers) against the "Related Parties" and "Released Parties" and future claims by the "Related Parties" against the "Released Parties. " The Settlement Agreement went on to

provide a means for the parties to the Settlement Agreement to work out these issues between themselves.

The law recognizes that a stay of litigation may be appropriate in various situations, such as pending the outcome of an appeal or arbitration, during a related bankruptcy proceeding, or, in certain circumstance, when there is an ongoing, related state court proceeding. None of these situations are present in this matter and defendant has failed to offer any legal authority or factual basis to support a stay of this matter. Defendant is free to raise the terms of the Settlement Agreement as a defense to plaintiff's claims and those defenses can be tested through the normal course of discovery and litigation in this action; however, defendant has failed to prove that a stay is necessary at this time. Accordingly,

**IT IS RECOMMENDED** that defendant's motion to dismiss, alternatively, motion for stay (rec. doc. 2) should be **DENIED.**

Signed in Baton Rouge, Louisiana, on August 24, 2010.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

provide a means for the parties to the Settlement Agreement to work out these issues between themselves.

The law recognizes that a stay of litigation may be appropriate in various situations, such as pending the outcome of an appeal or arbitration, during a related bankruptcy proceeding, or, in certain circumstance, when there is an ongoing, related state court proceeding. None of these situations are present in this matter and defendant has failed to offer any legal authority or factual basis to support a stay of this matter. Defendant is free to raise the terms of the Settlement Agreement as a defense to plaintiff's claims and those defenses can be tested through the normal course of discovery and litigation in this action; however, defendant has failed to prove that a stay is necessary at this time. Accordingly,

**IT IS RECOMMENDED** that defendant's motion to dismiss, alternatively, motion for stay (rec. doc. 2) should be **DENIED.**

Signed in Baton Rouge, Louisiana, on August 24, 2010.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**THE GRAY INSURANCE COMPANY**          **CIVIL ACTION**

**VERSUS**                              **NUMBER 09-399-RET-DLD**

**CONCENTRA INTEGRATED SERVICES, INC.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 (fourteen) days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 24, 2010.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**